## CLEVELAND, C., C. & I. RY. CO. *v.* McCLUNG.[*]

*(Circuit Court, S. D. Ohio, W. D.* March 16, 1883.)

**1. COLLECTOR OF CUSTOMS—RECEIPT OF FREIGHT ON BONDED MERCHANDISE—ACT OF JUNE 10, 1880.**

It is not the official duty of a collector of customs to receive the freights due to carriers for transportation of merchandise in bond, in pursuance of the act of June 10, 1880; but if the collector agrees to receive such freight in lieu of giving notice to the carrier, as required by the statute, before delivering the goods to consignees, he would be liable for any amount so received for the use of the carrier.

**2. SAME—WHEN LIABLE FOR ACTS OF DEPUTY.**

The receipt of such freights not being an official duty, a deputy could not render the collector liable for his acts by reason simply of his official relation to his superior. The collector would not be liable for freights collected by a deputy unless he had in some way authorized his deputy so to act, or unless he had so acted as to estop him from denying that the deputy was, in the matter complained of, acting by his authority for him.

**3. SAME.**

If the collector knew that his deputy was receiving the freight due to the carrier, and permitted the carrier to receive the freight through his deputy in the belief that he was acting for him, or by his acts or declarations held out his deputy as his agent in the matter to receive the freight due to the carrier, in lieu of the notice required by the statute, he would be liable to the carrier for any amount so paid to the deputy.

**4. COLLECTOR OF CUSTOMS — FREIGHT ON BONDED MERCHANDISE —WHEN NOT LIABLE FOR FAILURE TO GIVE NOTICE TO CARRIER.**

The plaintiff, not having alleged that the freight is unpaid, but, on the contrary, having alleged payment of the freight for his use and sued for its recovery, the carrier cannot recover damages by reason of the failure of the collector to give notice before delivering the merchandise to the consignees.

At Law.

*Stallo & Kittredge* and *Ramsey & Matthews,* for plaintiff.

*Channing Richards,* U. S. Atty., and *Henry Hooper,* Asst. U. S. Atty., for defendant.

BAXTER, J., *(charging jury.)* The act of congress of June 10, 1880, entitled "An act to amend the statutes in relation to immediate transportation of dutiable goods, and for other purposes," authorizes and provides for the transportation of such goods from the ports into which they are first brought to the several cities mentioned in the act, where the duties levied by law are to be ascertained and paid. It authorizes the delivery of such merchandise for transportation to some carrier designated by the secretary of the treasury. The same is to be transported in fastened cars, vessels, or vehicles, under the

[*]Reported by J. C. Harper, Esq., of the Cincinnati bar.
Affirmed. See 7 Sup. Ct. Rep. 262.

exclusive control of the officers of customs, and not to be un-
loaded or transhipped *in transitu* unless authorized by the treasury
regulations. And whenever the proper officer of customs shall be
duly notified in writing of the existence of a lien in favor of the car-
rier, for freight upon the goods so transported and in his custody,
he is required, "before delivering them to the consignee or owner,"
to give seasonable notice to the party or parties claiming the lien,
and such officer may refuse to deliver the same from any public or
bonded warehouse, or other place in which they are deposited, until
proof shall be made to his satisfaction that the freight thereon has
been paid. Such are the provisions of the statute so far as they are
material and pertinent to the issues to be passed upon in this action.

The plaintiff, in stating its causes of complaint, says that the de-
fendant was, at the several times stated, collector of customs and sur-
veyor of this port, and that it was a carrier designated by the secre-
tary of the treasury, and authorized to transport dutiable goods under
and pursuant thereto; that as such carrier, so authorized, it trans-
ported dutiable goods from the port or ports at which they first ar-
rived to this port, for which the several amounts alleged are due to
it; and that said goods were, on their arrival in this city, placed in
defendant's custody and under his control as collector and surveyor;
and that it duly notified him in writing of the existence of its lien
thereon for transporting the same, as provided by said act. And the
plaintiff then avers that it became and was defendant's duty to re-
fuse to deliver said goods until the freight so due to it was paid. It
then proceeds to charge that the said several consignees and owners
of said goods paid to the defendant the several sums so due to it for
freight, for its account and benefit, and then and thereupon caused
said goods to be delivered to the consignees without notice to the
plaintiff, whereby its lien for such freight was lost. It then says that
the defendant, though often requested, has not paid said sums or
either or any part of either of them, but that the same and every part
thereof, with interest thereupon from September 8, 1881, remains
due and unpaid, for which it demands judgment.

The defendant admits that he was surveyor and collector of this
port, as charged, and concedes that the goods were carried by plain-
tiff, placed in his custody and under his control, and delivered, with-
out notice to plaintiff, to the consignees, as is alleged. But he de-
nies that he was notified in writing, or otherwise, of plaintiff's lien
for freight, or that it became his duty not to deliver said goods until
the freight due the plaintiff thereon was paid; and he denies that he

ever received for the account or benefit of the plaintiff, the freight due for the carriage of said goods and sued for in this action. Such are the issues made by the pleadings, and presented for your consideration and determination. The responsibility, gentlemen, of ascertaining and deciding upon the facts, devolves on you. The complainant has adduced evidence to show that, upon the arrival of the goods at this port, it made, or caused to be made, *memoranda,* describing the goods so carried by it, the consignees for whom it was brought, the place from where shipped, and the amount due thereon for freight, and filed the same in defendant's public office with his recognized deputy. It then adduces evidence tending to establish that such *memoranda* was intended as a written notice of its lien for freight, and that by a long and uniform course of dealing between it and the defendant's office, the same was recognized, received, and accepted by defendant's said deputy as a sufficient notice, under the statute, of the existence of plaintiff's lien for freight and its claim therefor. It further appears in evidence, and the fact is not denied by the defendant, that in accordance with a custom prevailing at the custom-office at this place for eight or ten years preceding the transactions involved herein, the consignees paid the freight due to the plaintiffs to defendant's deputy; that such payments were exacted and required as a precedent condition to the delivery of such goods, and that the deputy accounted with and paid the same to the plaintiff from time to time as the same was demanded. Such payments were made for the freight due plaintiff, and sued for herein, to defendant's said deputy, sometimes in money, but most generally in checks, including duties due to the government and freight due to the plaintiff, drawn by the consignees in favor of defendant, or of the "collector" or "surveyor" of the customs of this port, which were indorsed by defendant, by his said deputy, in his official capacity, and collected in the usual course of business; and that, upon the receipt of such money or checks, as stated, in payment of duties and freights, the goods were, by the orders of said deputy and the acquiescence of defendant, delivered to the respective consignees; but that neither defendant nor his deputy has accounted with or paid to the plaintiff the amounts so collected for it, or any part thereof.

Upon these facts the plaintiff contends that it was dealing with the defendant, the surveyor and collector of customs, through his authorized deputy and agent, and that the amounts so paid to and accepted by said deputy were, and are, in law and in fact, a payment to and receipt by defendant, and that it is entitled to a recovery therefor, as

for money had and received by defendant for its use. But if the jury shall find that the payments made to and received by the deputy were for any reason not payments to or receipt by defendant, and that the defendant is not liable therefor, then and in that event it insists that such receipt and acceptance of said payments by said deputy were unauthorized by it, that said payments were invalid; and that the defendant, in violation of the duty imposed on him by the law, wrongfully delivered said goods before the payment of the amounts due it for freight were paid and without the seasonable notice to plaintiff of the deliveries to be made, whereby it lost its lien therefor, and that it is entitled to recover from defendant the damages resulting from and sustained by it in consequence of defendant's failure to give the notice required by the statute. That is, the plaintiff contends, that if it is not entitled to recover for money had and received, as already stated, then it can recover for the failure on the part of defendant to give the notice required by law of his intention to deliver said goods, so that plaintiff could have taken legal and proper steps to have retained and enforced its lien thereon, and in that way secured payment of the freight due it for their transportation.

Let us now consider these propositions separately, and in doing this, it will, I think, best subserve the ends of justice to dispose of the last proposition first.

The duty of defendant, under the statute, to give seasonable notice to the carrier before delivering goods to owners or consignees, comes only when he has been duly notified in writing by the carrier of the existence of a lien for freight; and the object of such notice is to enable the carrier to interpose, and assert, and enforce the lien as a means of securing payment of the freight. It follows, if no such notice as prescribed by law has been served on defendant, or if it has, that the freight charged for the carriage of such goods have been paid, the defendant was under no legal duty to notify the plaintiff of his intention to deliver the goods to the consignees; and as he was under no obligation to give the notice, he is guilty of no official dereliction in not giving it, and liable to no damages for such alleged neglect. Hence, the plaintiff alleged that it had duly notified defendant, in accordance with the law, of the existence of its lien, and the defendant as obstinately denies the allegation. This is the issue made by the pleading. But upon the trial both agree that the *memoranda* hitherto mentioned and read in evidence were lodged by the plaintiff with defendant's deputy, at defendant's office, and

upon this concession the controversy takes a modified form,—the plaintiff contending that such *memoranda* were good, sufficient notices, while the defendant insists they are not the notices required by law, and that consequently they do not, in connection with the statute, impose any legal duty whatever upon defendant. Whether these *memoranda* are or are not *per se* such a notice as is prescribed by the statute, is a question of law, to be decided by the court. This and other legal questions as to how far, if at all, the defendant is liable for the acts of his deputy, have been very fully discussed *pro* and *con* in the argument, and if a decision of them, or of any one or more of them, were directly or remotely necessary to a correct determination of this suit, the court would instruct you in relation thereto. But these several questions are not involved in this controversy. Our duty is to consider and try the case made by the plaintiff's petition.

In order to authorize a recovery against defendant for failing to give him the seasonable notice required by the statute, before delivering the goods to the owners or consignees, there must be an averment that the freights due it, and for which it had a lien, were owing and unpaid; for if the freights had been paid, the plaintiff's lien thereon would be extinguished and defendant relieved of the statutory injunction to give the notice. There is no such averment in the plaintiff's petition in this case. On the contrary it distinctly avers that the consignees did pay the freight to the defendant; and, while it does not say in express terms that it authorized such payments to be made, by demanding and suing for the same, as it has been done, it ratifies and confirms the payments, and claims that the money was received for its account and benefit, and demands judgment therefor. This is in fact the *gravamen* of its complaint—the theory upon which its suit rests. Upon these averments and the legal consequences deducible therefrom, the court instructs you that we will have to try this case upon the hypothesis that the freight due from the consignees to the plaintiff, for the carriage of the goods in question, was paid before the goods were delivered by defendant to the consignees; and that defendant was, therefore, under no legal duty to give plaintiff notice of his intention to make such deliveries. The plaintiff will not be permitted, after averring payment of the freights, as it has done, to recover damages because defendant failed to give it notice of its intended deliveries. For this reason there is no necessity to pass upon the question as to the legal sufficiency of the alleged notice from the plaintiff to the defendant, of the existence of its lien, or for the court to express any opinion upon the numerous questions that have

been made and discussed in regard to the extent of defendant's liability for the act of his deputy. These may all be considered as eliminated from the case.

The vital question to be considered is one of fact to be decided by you, to-wit: Did the consignees, or any one or more of them, pay the freights due the plaintiff, or any part of it, to the defendant, for the account and benefit of the plaintiff? If such payments were made, the plaintiff is entitled to recover the amounts thereof, with interest, in this action, and you ought to so find. As it has been already stated, the plaintiff does not contend that such payments were made to defendant personally. The contention is that the payments were made to his (defendant's) deputy, under such circumstances as, in legal contemplation, makes them payments to the defendant. On the other hand, the defendant admits that the payments of the freights were made to and accepted by his deputy, and that the same have not been accounted for or paid by the deputy to the plaintiff. But he denies that he ever authorized his deputy to act for him in the premises, and insists that he is not in law liable to the plaintiff for any part of the freight so collected by his subordinate. Thus the controversy is still further narrowed down to an inquiry as to whether the deputy, in the several transactions mentioned, acted by express or implied authority as *defendant's* agent in the matter, or under such circumstances as would in law estop defendant from asserting the contrary.

The court instructs you that the defendant, as collector and surveyor of this port, was under no legal duty to collect freights due to the plaintiff. The law simply required him, when duly served with notice by the carrier of the existence of a lien upon the goods in bond for freight, to give the carrier seasonable notice, before delivering the goods in his custody and under his control to the owners or to the consignees, and imposed on him the duty to withhold delivery until satisfactory proof was furnished that freight had been paid. It was competent for the parties by express contract or a tacit understanding, resulting from an established course of business, for the benefit and convenience of both parties, to agree that a collector and surveyor might receive the freights due the carrier for account of the latter, and upon receipt thereof to deliver the goods to the owners or consignees, and that such receipt of the freight by him should be in lieu of the notice which the law required him to give the carrier in the contingency prescribed by the statute; and it may be that such tacit or implied agreement existed between these parties in this case. This is the question for your determination. The defendant was un-

der no official or legal obligation to undertake to thus act for the plaintiff. If he did so he was but acting in his private capacity, and not in the discharge of any official duty. It not being an official duty, his deputy could not thus act by reason simply of his official relation to his superior, and defendant would not be liable for such extra-official action unless he had in some way authorized his deputy so to act, or unless he has so acted as to estop him from denying that the deputy was, in the specific matters complained of, acting by his authority for him.

This is the question of fact referred to you. The plaintiff has made no effort to prove any express authority from the defendant to his deputy to act as his agent in the collection of freights due to it. But it has proven that the deputy had been making such collections for several years prior to defendant's induction into the offices of collector and surveyor, in March, 1881, and continued to do so till his dismission in September following. It has been said that such was the regular course of business in the office for 10 years, recognized and acquiesced in by the plaintiff and the importers. If defendant had knowledge of this custom, acquired from observation, from the business and books of his office, or through other sources, and acquiesced therein and permitted the plaintiff to make its collections through his deputy, in the belief that he was acting for and as defendant's agent, or by his acts or declarations represented or held him out as his agent in the matter, the plaintiff and defendant both understanding and tacitly or otherwise agreeing that the freights due the plaintiff should be paid in this way in lieu of the notice which the statute in the contingency prescribed, required the defendant, as collector, to give to the plaintiff, and which has been fully explained, he would be liable to the plaintiff for all sums so paid to the deputy for the plaintiff's use, and claimed in its petition, with interest, and you ought so to find. But if the deputy acted without authority from defendant, and the defendant did not know of his said action, nor hold him out to the plaintiff as his agent, nor do or say anything to mislead the plaintiff or its officers or agents, nor undertake or assume to collect plaintiff's freight, he would not be liable to plaintiff's demands, and your verdict ought to be in his favor. It is for you to ascertain how this fact is. I have not attempted to recite all the evidence produced and relied on by the respective parties, but it is all submitted for your consideration. It is your duty to give to it, and to each and every part of it, just such weight as in your judgment ought to be given to

it, and being guided by the principles of law given you in this charge, work out your own conclusions and report the result, in the form of a verdict, to the court.